UNITED STATES, Appellee

v.

Steven A. DANYLO II, Airman Basic
U.S. Air Force, Appellant

No. 13-0570

Crim. App. No. 37916

United States Court of Appeals for the Armed Forces

Argued December 16, 2013

Decided March 24, 2014

STUCKY, J., delivered the opinion of the Court, in which RYAN and OHLSON, JJ., joined. BAKER, C.J., filed a separate dissenting opinion, in which ERDMANN, J., joined.


Counsel


For Appellant: Major Anthony D. Ortiz (argued).


For Appellee: Lieutenant Colonel C. Taylor Smith (argued); Colonel Don M. Christensen, Major Terence S. Dougherty, and Gerald R. Bruce, Esq. (on brief); Major Daniel J. Breen.


Military Judge: Matthew D. Van Dalen


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge STUCKY delivered the opinion of the Court.

Appellant was in pretrial confinement for nearly a year before he was convicted of various drug crimes and assault. We granted review to determine whether he was denied his Sixth Amendment right to a speedy trial when his court-martial commenced about 350 days after he entered pretrial confinement, and whether the military judge erred when he focused only on a portion of the delay in his speedy trial analysis after the appellate court had already ruled on the other portion. We hold that the delay does not rise to the level of a Sixth Amendment violation in this case, and that the military judge below did not err in his speedy trial analysis. We therefore affirm the judgment of the United States Air Force Court of Criminal Appeals (CCA).

## I. Background

Pursuant to his pleas, Appellant was convicted of one specification each of using marijuana, distributing marijuana, using cocaine, distributing cocaine, introducing marijuana onto base, and assault, in violation of Articles 112a and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 912a, 928 (2012). Appellant's speedy trial issues arose from the Government's slow prosecution of his case, even though he pled guilty and was in pretrial confinement, and the slow review of the Government's appeal by the CCA.

Appellant tested positive for drugs and was interrogated about the results of the drug test on March 26, 2010. He was restricted to base on April 9, and further restricted a day later, with base liberties restricted and an escort required outside of the dormitory. After being further restricted, Appellant assaulted another airman, and on April 16, he was placed in pretrial confinement. A few weeks after that, on May 3, he demanded a speedy trial for the first time.

Throughout June and July 2010, the Government prosecuted his case by preferring charges, holding a hearing pursuant to Article 32, UCMJ, 10 U.S.C. § 832 (2012), and referring charges to court-martial. On August 6, the convening authority signed a pretrial agreement in which Appellant agreed to plead guilty to most charges. The pretrial agreement preserved the speedy trial issue for appeal.

On August 10, 2010, 123 days after being restricted to base and 116 days after being placed in pretrial confinement,[1] the military judge dismissed all charges against Appellant with prejudice due to a speedy trial violation. The Government appealed to the CCA on September 20, 2010, and 170 days later,

---

[1] These time periods are miscalculated in the record as 121 days and 115 days, respectively. In calculating the number of days elapsed for a speedy trial claim, "do not count the first day, but count the last day." United States v. Vogan, 35 M.J. 32, 34 n.* (C.M.A. 1992) (citing Rule for Courts-Martial (R.C.M.) 707(b)(1)).

the CCA granted the Government's appeal.  United States v. Danylo, Misc. Dkt. No. 2010-15, slip op. at 14 (A.F. Ct. Crim. App. Mar. 9, 2011) (order setting aside dismissal by military judge and remanding for further proceedings) (unpublished). This 170-day delay at the CCA occurred despite multiple motions from both Appellant and the Government requesting expedited review, and despite the statutory priority given Article 62 appeals.  Article 62(b), UCMJ, 10 U.S.C. § 862(b) (2012) ("An appeal under this section . . . shall, whenever practicable, have priority over all other proceedings before [the CCA].").  This Court denied a petition for review of that CCA decision without prejudice.  United States v. Danylo, 70 M.J. 217 (C.A.A.F. 2011) (denying petition).

    Appellant's court-martial resumed on March 31, 2011.  He argued again the speedy trial issue, which this time the military judge denied.  Pursuant to conditional pleas and a new pretrial agreement limiting confinement to time served, which now totaled 349 days, Appellant was convicted and sentenced to a bad-conduct discharge and confinement for ten months.  The convening authority, recognizing that the term of confinement had already been served, approved the sentence as adjudged on April 22, 2011.  Two years later, the CCA affirmed.  United States v. Danylo, No. ACM 37916, 2013 CCA LEXIS 334, 2013 WL 1911222 (A.F. Ct. Crim. App. Apr. 17, 2013) (unpublished).

## II.  Discussion

We review de novo Sixth Amendment speedy trial issues. United States v. Cooper, 58 M.J. 54, 58 (C.A.A.F. 2003).  In analyzing an appellant's speedy trial right, we "giv[e] substantial deference to the military judge's findings of fact unless they are clearly erroneous."  United States v. Thompson, 68 M.J. 308, 312 (C.A.A.F. 2010).

### A.  Appellant's Speedy Trial Claim

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."  U.S. Const. amend VI.  In the military, Sixth Amendment speedy trial protections are triggered upon preferral of charges or the imposition of pretrial restraint.  See Vogan, 35 M.J. at 33.  In addition to the Sixth Amendment, the UCMJ and the R.C.M. afford an accused a right to a speedy trial.  Under Article 10, UCMJ, 10 U.S.C. § 810 (2012), once an appellant is placed in pretrial confinement the Government is required to exercise "reasonable diligence" in bringing the accused to trial.  United States v. Kossman, 38 M.J. 258, 262 (C.M.A. 1993) (internal quotation marks omitted).  Specifically, R.C.M. 707(a) provides that "[t]he accused shall be brought to trial within 120 days" of the imposition of restraint.  At Appellant's first trial in 2010, the military judge found a speedy trial violation under Article 10 and R.C.M. 707, but not the Sixth Amendment.  Appellant

presently claims a violation of his Sixth Amendment speedy trial right. Appellant does not make an R.C.M. 707 claim before this Court, and although he argued for an Article 10 violation in his brief before this Court, the only assigned issue in his petition, and the issue this Court granted, was the Sixth Amendment issue.

In determining whether an appellant has been denied his right to a speedy trial under the Sixth Amendment, this Court considers the following factors: "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." United States v. Mizgala, 61 M.J. 122, 129 (C.A.A.F. 2005) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)).

### 1. Length of the Delay

"[U]nless the delay is facially unreasonable, the full due process analysis will not be triggered." United States v. Merritt, 72 M.J. 483, 489 (C.A.A.F. 2013) (internal quotation marks and citation omitted). Appellant was in pretrial confinement for 349 days until his court-martial occurred. This exceeds periods of pretrial confinement that we have previously found to trigger full speedy trial analysis. See Thompson, 68 M.J. at 312 (145 days); United States v. Cossio, 64 M.J. 254, 257 (C.A.A.F. 2007) (117 days). The Government concedes that this factor weighs in Appellant's favor.

### 2.  Reasons for the Delay

Two main periods of time account for the 349-day delay. First, it took the Government 116 days to bring Appellant to trial after he entered pretrial confinement.  Second, the Article 62 appeal took 170 days, while Appellant remained in confinement.

The first delay is primarily due to the prosecution's strategy, which was to turn all four of the other alleged members of a drug ring into witnesses against Appellant.  This was a time-consuming approach because it required obtaining immunity for the other witnesses, and it took over three months from the date of Appellant's entering confinement for the Government to be ready to refer charges to court-martial. However, this strategy was certainly not unusual or inappropriate, and under the circumstances it did not take an inordinate amount of time.

Under the Sixth Amendment speedy trial right, the Supreme Court has indicated that such a prosecution strategy is reasonable.  See United States v. Ewell, 383 U.S. 116, 120 (1966) (noting that prosecution procedures "are designed to move at a deliberate pace," and finding no Sixth Amendment speedy trial violation in a nineteen-month pretrial delay); see also United States v. Grom, 21 M.J. 53, 57 (C.M.A. 1985) (noting that "[i]n Barker, most of the five-year delay between arrest and

trial was due to the prosecution's efforts to obtain a conviction" through the testimony of Barker's co-actor). In Grom, the appellant raised a speedy trial issue under both Article 10, UCMJ, and the Sixth Amendment. Id. at 54. Without distinguishing between the two, our predecessor court found nothing improper in an eight-month delay due to the prosecution's strategy, even though "the charges finally referred to trial were based on evidence available at the time of the arrest." Id. at 57. While the appellant in Grom was not in pretrial confinement, he was somewhat restricted because he had been involuntarily retained in military service beyond his normal date of separation from active duty pending his trial. See id. at 55; Barker, 407 U.S. at 533 ("[E]ven if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty.").

In the present case, the Government provided substantial justification for the time it took for its prosecution strategy, including the process of obtaining immunity for its witnesses. And as the CCA noted, the Government took this time to investigate the case, convene a pretrial confinement review hearing, prepare and obtain approval for the charges, and hold an Article 32 hearing. Danylo, Misc. Dkt. No. 2010-15, slip op. at 5. The prosecution in this case was therefore reasonable under the Sixth Amendment.

8

The other main source of delay -- the CCA's delay on the Article 62 appeal -- is unexplained. "[T]imely management and disposition of cases docketed at the Courts of Criminal Appeals is a responsibility of the Courts of Criminal Appeals." United States v. Moreno, 63 M.J. 129, 137 (C.A.A.F. 2006). Article 62(b), UCMJ, requires that an appeal by the government "shall, whenever practicable, have priority over all other proceedings before that court."[2] While Appellant's appeal was pending, different panels of the CCA issued decisions in 108 cases, three of which were Article 62 appeals. Of these three, Appellant was the only one in pretrial confinement. The CCA's delay occurred even though both parties had sought to expedite the processing of the Government's Article 62 appeal. The CCA also provided no explanation as to why speedier disposition was not practicable. See Danylo, Misc. Dkt. No. 2010-15, at 5 n.3.

Despite our significant concern about the processing time at the lower court, we are reluctant to pierce the veil of the

---

[2] Article 62(c), UCMJ, provides that delays resulting from an appeal under Article 62 "shall be excluded" from speedy trial analysis "unless an appropriate authority determines that the appeal was filed solely for the purpose of delay with the knowledge that it was totally frivolous and without merit." 10 U.S.C. § 862(c) (2012). The Supreme Court "give[s] Congress the highest deference in ordering military affairs" under its constitutional mandate "[t]o make Rules for the Government and Regulation of the land and naval Forces." Loving v. United States, 517 U.S. 748, 759, 768 (1996) (citing U.S. Const. art. I, § 8, cl. 14). Nevertheless, Article 62(c) does not totally immunize the Courts of Criminal Appeals against judicial review of the timeliness of their decisions.

CCA's decision-making process and attempt to regulate the day-to-day mechanics of the legal process assigned to the court. See Moreno, 63 M.J. at 137 (noting that we apply "a more flexible review" of the CCA's review period, "recognizing that it involves the exercise of [their] judicial decision-making authority").  Here, fewer than six months elapsed between the Government's notice of appeal and the CCA's decision.  See id. at 137-38 ("We find that a period of slightly over six months is not an unreasonable time for review by the Court of Criminal Appeals."); Danylo, Misc. Dkt. No. 2010-15, slip op. at 14. Because the Article 62 appellate process continued deliberately, though slowly, this delay is "more neutral."  United States v. Wilson, 72 M.J. 347, 352 (C.A.A.F. 2013) (quoting Barker, 407 U.S. at 531) (internal quotation marks omitted).

### 3.  Assertion of the Speedy Trial Right

As the Government conceded, "[t]here is no dispute that Appellant demanded a speedy trial and requested release from pretrial confinement."  He made several requests for a speedy trial throughout the course of his appeal beginning on May 3, 2010.  Additionally, the Government moved for expedited consideration multiple times.  This factor weighs strongly in Appellant's favor.

### 4. Prejudice

Appellant served two months of confinement beyond his adjudged sentence. But in four decisions, no military judge or court of appeals has found significant prejudice in Appellant's case. We also decline to do so.

There are "three similar interests" relevant to the prejudice analysis: "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired." Moreno, 63 M.J. at 138–39. "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" Doggett v. United States, 505 U.S. 647, 654 (1992) (quoting Barker, 407 U.S. at 532). While the first interest weighs in Appellant's favor, the second and third weigh against him.

First, Appellant was subjected to pretrial confinement for nearly a year, two months longer than his adjudged sentence. The military judge credited Appellant with the pretrial confinement he served against his adjudged sentence, and Appellant was entitled to be released immediately following the conclusion of his court-martial. Appellant did not receive

credit for the two months' confinement he served beyond the ten-month sentence, though, because he waived the issue. In his pretrial agreement, he agreed to waive all waivable motions, including motions pursuant to Article 13, UCMJ, 10 U.S.C. § 913 (2012) (limiting pretrial confinement). See United States v. McCants, 39 M.J. 91, 93 (C.M.A. 1994) ("Failure to make a motion for appropriate relief [for pretrial-confinement credit at trial] constitutes waiver.") (citing R.C.M. 905(e)). Appellant made no such motion in this case; even had he done so, the issue was waived in his pretrial agreement.

Moreover, we have never held that pretrial confinement which exceeds an adjudged sentence is per se prejudicial. See Bell v. Wolfish, 441 U.S. 520, 539 (1979) (holding that, when "reasonably related to a legitimate governmental objective," pretrial detention is not "punishment") (internal quotation marks omitted). The Barker Court held that ten months of pretrial confinement -- nearly as long as the case before us -- was not prejudicial where there was no adverse impact on the defendant's ability to present a defense. Barker, 407 U.S. at 534.

Second, Appellant argues that the confinement conditions caused him particularized anxiety and concern. While the military judge found that Appellant's confinement "almost certainly caused anxiety, stress, and the loss of ability to

carry on a normal lifestyle," the confinement conditions were not unique to his case, and the CCA noted that some of his anxiety can be attributed to his own misconduct while in pretrial confinement. Danylo, 2013 CCA LEXIS 334, at *10, 2013 WL 1911222, at *3; Brief for Appellee at 27, United States v. Danylo, No. 13-0570 (C.A.A.F. Nov. 13, 2013) (noting that, "[i]n less than a year, Appellant ran afoul of [confinement] rules and regulations 145 times").

Appellant does not argue any basis for weighing the third interest in his favor, and the record does not show one. There is no indication of any loss of evidence or impact to case preparation due to the delay. See Doggett, 505 U.S. at 654.

Appellant has not shown sufficient prejudice for a Sixth Amendment violation. While the Barker/Moreno factors of the length of the delay and the assertion of the speedy trial right weigh in Appellant's favor, the reasons for the delay are prosecution strategy, which was reasonable, and slow but deliberate appellate review. While Appellant served two months of confinement in excess of what was actually adjudged, he has not demonstrated prejudice that rises to the level of a Sixth Amendment violation. See Reed v. Farley, 512 U.S. 339, 353 (1994) ("A showing of prejudice is required to establish a violation of the Sixth Amendment Speedy Trial Clause, and that necessary ingredient is entirely missing here."). Thus,

Appellant's Sixth Amendment speedy trial rights were not violated.

Further, given the facts of this case, granting the remedy Appellant requests -- dismissal with prejudice -- would be disproportionate to any prejudice he did suffer. Any prejudice Appellant suffered does not rise to the level of a Sixth Amendment violation, so he is not entitled to such a windfall.

While we find no Sixth Amendment violations on the facts of this case, the lengthy delay in resolving the Article 62 appeal is quite troublesome. The responsibility for timely decision making at the Courts of Criminal Appeals lies with those courts themselves. Moreno, 63 M.J. at 137. However, the responsibility for providing the necessary resources for the proper functioning of the appellate system, including the Courts of Criminal Appeals, lies with the Judge Advocates General, who are required by Congress to establish those courts and, within the boundaries of judicial independence, to supervise them. Articles 6(a), 66(a), UCMJ, 10 U.S.C. §§ 806(a), 866(a) (2012); Moreno, 63 M.J. at 137; Diaz v. J. Advocate Gen. of the Navy, 59 M.J. 34, 40 (C.A.A.F. 2003). We expect all concerned with these matters to exercise the necessary "institutional vigilance" to ensure timely action on appeals, particularly those required by statute to be expedited. See Diaz, 59 M.J. at 39–40.

B.  The Military Judge's Speedy Trial Analysis

Appellant also argues that the military judge erred in his second trial by only considering the period of time consumed by the Article 62 appeal in evaluating the second motion to dismiss.  The military judge's findings of fact covered the entire period of delay from March 2010 through March 2011, but he "focus[ed] only upon the delays incurred after the Article 62(a) appeal was brought by the government."  The military judge said he did so because (1) the CCA had already considered and ruled on the delay preceding the Article 62 appeal "so this point is moot"; and (2) the Government's failure to prosecute "should not be imputed upon or held against the AFCCA."  The CCA found that the military judge's ruling was not clearly erroneous, because the military judge had considered the entire period of pretrial confinement even though his focus was on the appellate review period.  Danylo, 2013 CCA LEXIS 334, at *5-*6, 2013 WL 1911222, at *2.

Analysis of a Sixth Amendment speedy trial claim requires consideration of the entire period of delay from arrest (pretrial confinement) or preferral of charges until commencement of trial on the merits.  United States v. MacDonald, 456 U.S. 1, 6-8 (1982).  "That review spans a continuum of process from review by the convening authority under Article 60 . . . to review by a Court of Criminal Appeals

15

under Article 66 . . . to review, in appropriate cases, by this Court under Article 67." Diaz, 59 M.J. at 37.

The military judge did consider the full period of Appellant's case since his positive drug test. In doing so, the military judge essentially applied to the first segment of processing time the "law of the case" doctrine, which states that a trial court is bound by the ruling of a higher appellate court remanding the case. United States v. Morris, 49 M.J. 227, 230 (C.A.A.F. 1998). Thus, the military judge had to focus on the period of delay unaddressed by the CCA, since the CCA had already decided that there was no speedy trial issue in the pre-appeal delay.

Appellant argues that the military judge should have considered the period of delay as one continuum, but this is contrary to the reasoning of our case law. In our speedy trial jurisprudence, we break down the periods of delay, analyze the reasons for each, and may express concern with some but not other periods of delay. See, e.g., Wilson, 72 M.J. at 352 (adopting the military judge's separation of the pretrial delay into distinct time periods requiring individual analysis); Moreno, 63 M.J. at 136 (holding that in the post-trial context, each time period is reviewed individually "because the reasons for the delay may be different at each stage and different parties are responsible for the timely completion of each

16

segment"). The military judge did not err in focusing on one portion of the delay in his speedy trial analysis where the CCA, by whose judgment the military judge was bound, had already ruled on the other portion.

## III. Judgment

The judgment of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Danylo, No. 13-0570/AF

BAKER, Chief Judge, with whom ERDMANN, Judge, joins (dissenting):

I would reverse this case. In my view, all four Barker v. Wingo factors favor Appellant. Barker v. Wingo, 407 U.S. 514, 530 (1972). The second and fourth factors do not weigh heavily in his favor, but they weigh in his favor nonetheless. Thus, if Barker v. Wingo is the test for a Sixth Amendment speedy trial claim, and all four factors weigh in favor of Appellant, I do not see how or why he should not prevail on the underlying Sixth Amendment claim. Therefore, I respectfully dissent.

## Discussion

The Court agrees that Barker v. Wingo provides the analytic framework for addressing Appellant's speedy trial claim. Barker invites consideration of four factors with no one factor being dispositive: (1) the length of delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and, (4) prejudice to the appellant. Barker, 407 U.S. at 530, 533. The factors are related and "must be considered together with such other circumstances as may be relevant. . . . [C]ourts must still engage in a difficult and sensitive balancing process." Id. at 533. The Court further agrees that as provided in Article 62(b), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862(b) (2012), an Article 62, UCMJ, appeal, such as this one, "shall, whenever practicable, have priority

over all other proceedings before [the Court of Criminal Appeals (CCA)]." "Priority" and "practicable" are not statutorily defined, but surely their plain English meaning is clear -- the case is supposed to move to the front of the line if feasible.

Where the Court divides is on consideration of the second and fourth factors. First, I disagree on the extent to which the second Barker factor -- the reasons for delay -- weighs against Appellant. The majority concludes that this factor is "more neutral." United States v. Danylo, 73 M.J. __, __ (10) (C.A.A.F. 2014) (internal quotation marks and citations omitted). It reaches this conclusion based on the determination that the other "main source of delay -- the CCA's delay on the Article 62 appeal -- is unexplained." Id. at __ (9). According to the majority, the delay is unexplained, because "[d]espite our significant concern about the processing time at the lower court, we are reluctant to pierce the veil of the CCA's decision-making process and attempt to regulate the day-to-day mechanics of the legal process assigned to the court." Id. at __ (9-10). I share this underlying concern, as first expressed in United States v. Moreno, 63 M.J. 129, 137 (C.A.A.F. 2006).

However, this Court need not pierce the deliberative veil of the CCA or, for that matter, Monday morning quarterback the day-to-day mechanics of the CCA, to see how this factor weighs in Appellant's favor. One need only look to the military

2

judge's findings of fact.[1]  These findings of fact include the

following:

- The CCA granted the Government's Article 62, UCMJ, appeal "170 days after the Government originally filed its Article 62 appeal and 191 days after docketing with the CCA."

- "108 cases were decided by the AFCCA between the submission of the Article 62 appeal (20 September 2010) and 9 March 2011."

- "Three of those cases were Article 62(a) appeals and 65 were merits cases."  This was also the only case "in which the accused was in pretrial confinement."

- "[S]ince the summer of 2010, the AFCCA has had four unfilled positions for appellate court judges (out of 9) and one unmanned position for a law clerk (out of 2)."

- Appellant and Government each moved for expedited processing three times while the case was pending at the CCA.

- On October 16, 2010, the Government "requested oral argument."  But the CCA did not respond until January 14, 2011, when it ordered oral argument for January 20, 2011.

In my view, Appellant should prevail on the second factor

based on these factual findings and the absence of any

counterbalancing reason or explanation for the delay.  For sure,

there might well be good reason why the CCA took the time it did

to decide this case, even with the extenuating factors of

pretrial confinement in the context of an underlying speedy

---

[1] As the majority notes, "we give substantial deference to the military judge's findings of fact unless they are clearly erroneous."  Danylo, 73 M.J. at __ (5) (internal quotation marks, brackets, and citation omitted).  The majority has not concluded that any of the military judge's findings are clearly erroneous.

trial claim. An appellate court might reasonably take six months to debate and deliberate on a difficult or complex question of law.[2] However, in the absence of an appropriate reason explaining the delay, and thus where the only facts that are known are those stated above, factor two is not "more neutral"; it favors Appellant. Danylo, 73 M.J. at __ (10) (internal quotation marks and citation omitted); see United States v. Wilson, 72 M.J. 347, 353 (C.A.A.F. 2013) ("The delays identified by the military judge weigh against the Government, however, that weight is minimized when balanced against the Government's explanations as to the overall time period.").

Moreover, several additional facts weigh in favor of Appellant when considering the second factor on reasons for delay. One, Appellant was held in pretrial confinement while the Government appealed the military judge's earlier ruling in favor of Appellant's speedy trial question. Two, during this period, Appellant asserted his right to a speedy trial and timely appellate review, including priority review in the context of Article 62, UCMJ. In fact, the Government three times joined Appellant in requesting expedited appellate review.

---

[2] Indeed, as a general rule "an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay." United States v. Loud Hawk, 474 U.S. 302, 315 (1986). But "delays in bringing the case to trial caused by the Government's interlocutory appeal may be weighed in determining whether a defendant has suffered a violation of his rights to a speedy trial." Id. at 316.

4

Three, the applicable law on speedy trial is settled.  And fourth, most importantly, the Government failed to staff the CCA at adequate levels during the pendency of Appellant's Article 62, UCMJ, appeal.  For sure, points one and two relate directly to other <u>Barker</u> factors.  But they are relevant to factor two addressing the reasons for delay.  Why?  Because in my view, where an accused is in pretrial confinement and otherwise asserts his right to priority Article 62, UCMJ, review, unexplained delay is not neutral, it cuts in favor of Appellant.  Neither the Government nor the majority cite any facts that counterbalance these facts and pull the second factor back to neutral.

The second divide between the majority and dissent is on the question of whether two months of incarceration beyond one's point of adjudged confinement constitutes <u>Barker</u> prejudice, where an Appellant otherwise prevails on the preceding three factors.[3]  In this regard, it is worth noting that the majority and dissent agree on the facts:  "Appellant served two months of confinement beyond his adjudged sentence."  <u>Danylo</u>, 73 M.J. at __ (11).

---

[3] This question arises whether one adopts the majority's or the dissent's analysis as the majority concludes before addressing the prejudice prong of <u>Barker</u> that Appellant has prevailed on factors one and three, with the second factor being "more neutral."  <u>Danylo</u>, 73 M.J. at __ (10) (internal quotation marks and citation omitted).

5

However, I disagree with the majority on what as a matter of law is required to show Barker prejudice.  The Barker Court recognized three interests that could give rise to Sixth Amendment prejudice:  "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."  United States v. Mizgala, 61 M.J. 122, 129 (C.A.A.F. 2005) (quoting Barker, 407 U.S. at 532).  To be sure, the Barker Court held that "[o]f these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  Id. Accordingly, the majority concludes that "[w]hile the first interest weighs in Appellant's favor, the second and third weigh against him."  Danylo, 73 M.J. at __ (11).  The problem with this conclusion is that while Barker highlights the gravity of prejudice that impairs the defense, it does not do so at the exclusion of the other two interests.

Two months of excessive incarceration is not a long time compared to other periods of incarceration found oppressive under Barker nor is it oppressive in the sense that it is unduly harsh.  It is nonetheless time spent above and beyond the actual sentence received, and that is prejudicial where such incarceration is based on unreasonable delay attributable to the

government.[4]  Thus, it is not logical to conclude that time served in confinement beyond what was lawfully adjudged or should have been served is not oppressive or prejudicial.

Therefore, because I conclude that all four Barker factors favor Appellant, he should prevail on his Sixth Amendment claim.

---

[4] When delays in the processing of a case are in the course of ordinary business and trial strategy, that delay cannot be held against the government.  United States v. Ewell, 383 U.S. 116, 120 (1966) (noting that "ordinary procedures for criminal prosecution are designed to move at a deliberate pace.  A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself.").  Article 62(c), UCMJ, is consistent with this view and excludes "[a]ny period of delay resulting from an appeal under this section . . . in deciding any issue regarding denial of a speedy trial."  However, Article 62, UCMJ, does not purport to eliminate the Sixth Amendment right to a speedy trial or give the government a pass on the application of Barker v. Wingo.