# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

### No. ACM 39684

————————————

### UNITED STATES
*Appellee*

**v.**

### Jenna E. SHOUEY

Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 21 October 2020

————————————

*Military Judge:* Matthew D. Talcott

*Approved sentence:* Bad-conduct discharge, confinement for 10 months, forfeiture of all pay and allowances, reduction to E-1, and a reprimand. Sentence adjudged 4 January 2019 by GCM convened at the United States Air Force Academy, Colorado.[1]

*For Appellant:* Major Yolanda D. Miller, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Peter F. Kellett, USAF; Mary Ellen Payne, Esquire; Alexis Dorner (legal extern).[2]

Before POSCH, RAMÍREZ, and RICHARDSON, *Appellate Military Judges.*

Judge RAMÍREZ delivered the opinion of the court, in which Senior Judge POSCH and Judge RICHARDSON joined.

————————————

[1] Appellant was assigned to the 21st Space Wing at Peterson Air Force Base, Colorado, but the court-martial was held at the United States Air Force Academy, also in Colorado.

[2] Ms. Dorner was at all times supervised by an attorney admitted to practice before this court.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————————

RAMÍREZ, Judge:

A general court-martial composed of a military judge sitting alone found Appellant guilty, pursuant to her pleas and a pretrial agreement (PTA), of one charge and one specification in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892, for failure to obey a lawful order; one charge and three specifications in violation of Article 112a, UCMJ, 10 U.S.C. § 912a, for the wrongful possession of marijuana, wrongful possession of methamphetamine with the intent to distribute, and wrongful distribution of methamphetamine on divers occasions; and one charge and one specification in violation of Article 134, UCMJ, 10 U.S.C. § 934, for prostitution.[3,4]

The military judge sentenced Appellant to a bad-conduct discharge, confinement for ten months, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority approved the sentence as adjudged, and the PTA had no impact on the convening authority's ability to approve the adjudged sentence.[5]

On appeal, Appellant raises a single assignment of error:[6] whether the military judge abused his discretion when he denied Appellant's motion to dismiss the charges with prejudice for the Government's alleged violation of Article 10, UCMJ, 10 U.S.C. § 810. Appellant specifically raises three time periods when the Government allegedly failed to take immediate steps to try her: (1) a 61-day period from pretrial confinement to preferral of charges; (2) a 21-day period from preferral until completion of the preliminary hearing; and (3) a 37-day period between the preliminary hearing and service of the referred charges.

We find the military judge properly denied Appellant's motion. Additionally, after reviewing the entire record of this proceeding, we find no factual or

———————————————

[3] All references to the Uniform Code of Military Justice are to the *Manual for Courts-Martial, United States* (2016 ed.).

[4] While Appellant was charged with other crimes, the convening authority agreed not to go forward with those offenses as a term of the pretrial agreement (PTA).

[5] The PTA provided that the convening authority would not approve a punitive discharge greater than a bad-conduct discharge, and no confinement in excess of 14 months would be approved.

[6] This issue was raised pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982).

legal insufficiencies, and we find the sentence appropriate. We affirm the findings and sentence.

## I. BACKGROUND

After basic training, Appellant was stationed at Malmstrom Air Force Base (AFB), Montana. According to Appellant, while at Malmstrom AFB, she and her boyfriend, JH, were involved in a "domestic violence situation," which led military authorities to transfer Appellant to Peterson AFB, Colorado. Upon arriving at Peterson AFB, Appellant's commander issued her a no contact order on or about 8 June 2018, prohibiting all contact with JH.

However, between 8 June 2018 and 17 August 2018, Appellant had multiple contacts with JH, including through telephonic and text message conversations. Moreover, Appellant and JH moved into an apartment together in violation of her commander's order. Between 1 June 2018 and 17 August 2018, Appellant became involved in prostitution and the unlawful possession and distribution of drugs. Appellant eventually became the subject of investigations by civilian law enforcement and agents of the Air Force Office of Special Investigations (AFOSI). On 17 August 2018, while under AFOSI surveillance, Appellant sold methamphetamine, leading to her arrest. On that same day, AFOSI agents executed a search warrant of Appellant's residence and found marijuana and methamphetamine, and Appellant was placed in pretrial confinement at the El Paso County Criminal Justice Center, a civilian confinement facility in Colorado.

Ultimately, charges were preferred and referred, a PTA was negotiated, and Appellant's case was tried by general court-martial. Before trial, Appellant moved to dismiss the charges on grounds that the Prosecution failed to take "immediate steps" to try her, in violation of Article 10, UCMJ. In denying Appellant's motion, the military judge made the following findings of fact that we find are supported in the record.

Three days after being placed in pretrial confinement on 17 August 2018, the special court-martial convening authority appointed a pretrial confinement review officer (PCRO). On 21 August 2018, trial defense counsel provided notice of representation and demanded a speedy trial. On the same day, a pretrial confinement hearing was conducted. On 23 August 2018, the PCRO's decision memorandum was completed, finding a sufficient basis to keep Appellant in pretrial confinement. On 3 September 2018, the chief of military justice (CMJ) at the base where Appellant was assigned met with AFOSI agents to discuss the status of Appellant's case as well as the investigative steps the agents had yet to complete. Following the meeting, the CMJ met with AFOSI agents three to five times a week regarding the case.

As investigation of Appellant's case continued, on 17 September 2018 the CMJ obtained the AFOSI case file. AFOSI agents were awaiting results of the examination of a computer hard drive and Appellant's urinalysis that were sent for forensic testing. Although the AFOSI investigation was incomplete, on 24 September 2018 trial counsel completed a draft of the charges that were supported by the evidence. On 25 September 2018, trial defense counsel contacted the Prosecution to inquire about the status of the investigation and whether the preferral of charges was forthcoming.

On 26 September 2018, the base legal office sent its analysis of the draft charges for review by the general court-martial convening authority's (GCMCA) legal office, which completed its review on 3 October 2018 with suggested edits and corrections.

On 11 October 2018, the AFOSI attempted to obtain the civilian police department report of Appellant's interview as well as verbal summaries of interviews conducted by a detective involved in the case.

On 16 October 2018, charges were preferred against Appellant. Trial defense counsel was not available for an Article 32, UCMJ, 10 U.S.C. § 832, preliminary hearing from 19 October through 27 October 2018. The hearing occurred on 30 October 2018, and the preliminary hearing officer's report was completed on 5 November 2018.

On 7 November 2018, trial defense counsel submitted a PTA offer in an email to trial counsel and the CMJ. Trial counsel called trial defense counsel twice during the week of 13 through 18 November 2018 and left messages to discuss the PTA.

Over the next several weeks, the Prosecution and Defense exchanged several emails regarding the PTA, arraignment, and the trial date. On 19 November 2018, trial defense counsel followed up with the CMJ regarding the PTA offer. The next day, trial counsel proposed a 3 December 2018 arraignment. On 23 November 2018, trial defense counsel responded via email with a modified PTA offer.

From 26 November 2018 through 6 December 2018, trial counsel and the CMJ coordinated with the senior trial counsel and with the GCMCA's legal office regarding the preliminary hearing officer's recommendations.

On 27 November 2018, the CMJ contacted trial defense counsel to confirm matters regarding arraignment and the potential PTA. On the same day, trial defense counsel responded that he was in court, but would contact the CMJ later regarding the PTA offer. On 28 November 2018, the CMJ contacted trial defense counsel again with inputs on the PTA offer that were provided by the GCMCA's legal office. On 3 December 2018, trial defense counsel responded

that the PTA terms were agreeable, but that it would take a few days to get the PTA in writing and signed by Appellant.

On 4 December 2018, the referral package was sent to the GCMCA's legal office. On 6 December 2018, trial defense counsel signed and served a formal PTA offer. On 7 December 2018, trial defense counsel emailed the Prosecution with recommendations as to which specifications should be referred and not referred in order to reach an agreement on the terms of a PTA. On the same day, the GCMCA referred the charges. This offer was never acted upon by the GCMCA as trial defense counsel continued to communicate with the Government with recommendations regarding which specifications should be referred and not referred.

On 11 December 2018, the referred charges were served on Appellant. Appellant again demanded a speedy trial. On 13 December 2018, Appellant was arraigned. On 14 December 2018, the trial defense counsel filed an expert request for a presentencing evaluation. Meanwhile, the Prosecution indicated it would be ready for trial on 17 December 2018. On 19 December 2018, trial defense counsel withdrew its request for expert assistance. On 20 December 2018, the GCMCA signed a second PTA offer submitted by Appellant. On 27 December 2018, trial defense counsel filed "Defense Motion to Dismiss for Article 10 Violations." Trial began on 3 January 2019 and concluded on 4 January 2019.

After articulating the *Barker v. Wingo*, 407 U.S. 514 (1972), factors and applying the facts to those factors, the military judge denied Appellant's motion to dismiss. Ultimately, Appellant pleaded guilty in accordance with the PTA that she negotiated with the convening authority.

## II. DISCUSSION

### A. Law

When a military member is placed in confinement prior to trial, "immediate steps" must be taken to inform her of the specific wrong of which she is accused and either try her or release her. Article 10, UCMJ, 10 U.S.C. § 810.

This court reviews the question of whether an appellant was denied her right to a speedy trial under Article 10, UCMJ, de novo. *United States v. Wilson*, 72 M.J. 347, 350 (C.A.A.F. 2013) (citations omitted). However, we must give "substantial deference to a military judge's findings of fact that will be reversed only if they are clearly erroneous." *United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005) (citations omitted).

The speedy trial requirement of Article 10, UCMJ, does not "demand constant motion, but does impose on the Government the standard of 'reasonable

diligence in bringing the charges to trial.'" *United States v. Cooley*, 75 M.J. 247, 259 (C.A.A.F. 2016) (quoting *Mizgala*, 61 M.J. at 127). Appellate courts should remain mindful of "the proceeding as a whole and not mere speed." *Mizgala*, 61 M.J. at 129.

The United States Supreme Court established a four-factor test to determine "reasonable diligence," assessing: "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *Wilson*, 72 M.J. at 351 (citing *Barker*, 407 U.S. at 530). No one factor is "necessary or sufficient to finding of a deprivation of the right of speedy trial." *Cooley*, 75 M.J. at 259 (quoting *Barker*, 407 U.S. at 533).

Under the military's speedy trial jurisprudence, courts "break down the periods of delay, analyze the reasons for each, and may express concern with some but not other periods of delay." *United States v. Danylo*, 73 M.J. 183, 190 (C.A.A.F. 2014) (citations omitted). Generally, "[s]hort periods of inactivity are not fatal to an otherwise active prosecution." *United States v. Thompson*, 68 M.J. 308, 312 (C.A.A.F. 2010) (quoting *Mizgala*, 61 M.J. at 127).

When assessing the reason for delay, this court should consider the context, because a "delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531. Additionally, a delay intended to "hamper the defense" should be weighted more heavily than a "more neutral reason such as negligence." *Id.* Where the delay is based on the prosecution's trial strategy, a time-consuming approach is permissible if the strategy is "not unusual or inappropriate" under the circumstances. *Danylo*, 73 M.J. at 187. Ordinary "judicial impediments, such as crowded dockets, unavailability of judges, and attorney caseloads, must be realistically balanced." *United States v. Kossman*, 38 M.J. 258, 261–62 (C.M.A. 1993).

The Supreme Court has held that *Barker* does not require an affirmative demonstration of prejudice to prove a denial of the constitutional right to a speedy trial. *Moore v. Arizona*, 414 U.S. 25, 26 (1973) (per curiam); *see United States v. Miller*, 66 M.J. 571, 577 (N.M. Ct. Crim. App. 2008) (finding an Article 10, UCMJ, violation even though the accused suffered no "obvious prejudice").

The Supreme Court identified three interests, related to the speedy trial protection, to consider when assessing prejudice: (1) "to prevent oppressive pretrial incarceration;" (2) "to minimize anxiety and concern of the accused;" and, most importantly, (3) "to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532.

**B. Analysis**

We find sufficient evidence in the record to support the military judge's findings of fact. Additionally, we find the military judge correctly applied the applicable legal standards to the facts.

Both parties agree that Appellant made two demands for speedy trial. Therefore, we first analyze the length of the delay and the reasons for the delay.

While the total period of pretrial confinement was not insignificant, 139 days, it is not indicative of prejudice. Appellant was confined for multiple charges including drug possession, drug distribution, and prostitution. Additionally, the charges in this case spanned military and civilian jurisdictions. Finally, the Government brought these charges to trial with "reasonable diligence."

During the first period of alleged delay, from pretrial confinement to preferral of charges, the Government was actively preparing its case. The CMJ conducted meetings with the AFOSI approximately three to five times a week for about six weeks, beginning on 3 September 2018. On 17 September 2018, the CMJ received a copy of the investigative file from the AFOSI containing evidence acquired to that date. The following week, trial counsel completed a draft of the charges and forwarded that analysis to the convening authority's legal office. One week later, the analysis was returned to trial counsel with inputs from the GCMCA's legal staff, and the charges were preferred on 16 October 2018.

While the military judge found the length of time from pretrial confinement to preferral of charges "facially excessive," he also found "the reasons for the delay to be reasonable," and that the Government "acted with reasonable diligence in bringing this case to trial." We also find that the length of time, in light of the number and complexity of Appellant's charges, was reasonable. The record shows that during the investigation, the AFOSI conducted several wiretaps, interviews, a urinalysis, and a forensic analysis on a laptop computer. Appellant provides no support for her contention that the length of time it took investigators to conduct these investigative steps was unreasonable.

Appellant alleges another delay, from preferral of charges to completion of the preliminary hearing officer's report, was unreasonable. However, we find no unreasonable delay. On 17 October 2018, the Government identified a preliminary hearing officer who was suitable and available to conduct a hearing. Appellant's trial defense counsel was not available from 19 October through 27 October 2018. On 30 October 2018, one duty day after the trial defense counsel was again available, the hearing was conducted. On 5 November 2018, the preliminary hearing officer completed his report. Notwithstanding the conflicts in

the trial defense counsel's schedules, Appellant's case proceeded through this pre-referral period without unreasonable delay.

Finally, from completion of the preliminary hearing to the service of charges that the convening authority referred, Appellant contends that an unreasonable 37-day delay occurred. Between 7 November and 4 December 2018, there were various communications between trial counsel and trial defense counsel. Appellant initiated PTA discussions with the Government on 7 November 2018. On 6 December 2018, trial defense counsel signed and served a formal PTA offer. The next day, trial defense counsel emailed the Prosecution with recommendations regarding referral. On 7 December 2018, the convening authority referred charges, and on 11 December 2018, Appellant renewed her demand for a speedy trial. We find no unreasonable delay during this period.

Considering the combined length of the pretrial delay, we consider the fourth *Barker* factor—prejudice to Appellant. *See Barker*, 407 U.S. at 530. While not required to affirmatively demonstrate prejudice, *Moore*, 414 U.S. at 26, Appellant claims she suffered prejudice attributable to the 139-day delay that occurred while she was in pretrial confinement. Appellant filed a motion to consider her declaration regarding prejudice, which we granted.[7] In her declaration, she alleges the conditions of confinement, namely the lack of a means for exercise and the lack of natural sunlight, violated her rights as an Air Force detainee. She further claims she was suffering anxiety due to her inability to manage her finances, and that her ability to assist in her defense was substantially affected by her confinement because she was unable "to call [her] attorney on a non-recorded line."

We find no causal connection between these difficulties and the delays Appellant claims are unreasonable even if this court may consider them. There is no evidence that the conditions and anxiety Appellant alleges are different from those that a typical accused individual would experience. Additionally, there is nothing to suggest that Appellant's trial defense counsel was impaired at trial or in pretrial preparations by the time it took the Government to bring Appellant to trial.

While the length of delay, in total, may weigh in favor of Appellant, and Appellant demanded a speedy trial, the reasons for delay were reasonable, and we find no prejudice attributable to any delay. Therefore, we find Appellant's speedy trial rights under Article 10, UCMJ, were not violated. The military

---

[7] Following this court's Article 66(c), UCMJ, 10 U.S.C. § 866(c), mandate to review "the entire record," we assume without deciding that this court has authority to consider Appellant's outside-the-record declaration on the issue.

judge did not abuse his discretion in his factfinding, and we conclude Appellant has not shown denial of her right to a speedy trial under Article 10, UCMJ.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court