UNITED STATES, Appellee

v

ANDRE Q. JOHNSON, Airman Apprentice, U. S. Navy, Appellant

No. 27,751

May 24, 1974

·   *Lieutenant H. Neil Broder,* JAGC, USNR, argued the cause for Appellant, Accused.

*Captain Joseph W. Diver,* USMCR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel G. L. Bailey,* USMC.

## OPINION OF THE COURT

Duncan, Chief Judge:

Convicted of absence without leave and robbery, the accused contends that his motion to dismiss the charges for lack of a speedy trial was erroneously denied. He was placed in pretrial confinement on June 21, 1972, and his trial commenced 111 days later on October 10, 1972. Thus, the accused invokes the presumption of excessive delay that we laid down in United States v Burton, 21 USCMA 112, 44 CMR 166 (1971), and places on the Government its heavy burden of demonstrating "really extraordinary circumstances" to justify the delay beyond 90 days, United States v Marshall, 22 USCMA 431, 435, 47 CMR 409, 413 (1973).

The accused's original confinement was premised on his unauthorized absences and other charges dismissed at trial. On June 26, investigating Agent Salmon was advised that a co-accused, one Phillips, had named the accused as a participant in the robbery. Phillips was granted immunity on June 29, and departed on liberty, due to return on July 4. He, however, remained absent over leave until July 14. On his return, he gave an oral statement to the station investigator, Yeoman First Class Pashegoba. Pashegoba referred Phillips to Agent Salmon, who had, in the meantime, been removed from the investigation of the robbery in order that he and other agents might inquire into a series of fires aboard the U.S.S. *Forrestal,* then berthed in the area.

Salmon's involvement in the *Forrestal* investigation and Phillips' failure to appear for interview on three occasions resulted in delay until August 2, on which date his sworn statement was obtained. Charges were prepared against the accused on August 3, and an Article 32 investigation was completed on September 6, and forwarded, together with the charges, on September 7. On September 25, the case was referred to trial, and trial commenced on October 10.

In United States v Marshall, supra, we stated with regard to the *Burton* presumption, that

the Government may still show diligence, despite pretrial confinement of more than 3 months, in such cases as . . . those in which for reasons beyond the control of the prosecution the processing was necessarily delayed.

22 USCMA at 434, 47 CMR at 412.

In this case the Government concedes that there was a 111-day delay. But, as to the robbery offenses, it urges there was no substantial basis for the charge until Phillips executed his sworn statement on August 3. It considers the delay caused by his unauthorized absences beyond its control and points to the diversion of investigatory efforts to the *Forrestal* fires as a truly extraordinary circumstance that should in part excuse its compliance with *Burton.* As to the absence charges, it points out that it offered the accused the opportunity of trial by summary court-martial on August 8, but that disposition was stymied by his refusal. Conceding that he had the right to refuse trial by summary court on these minor offenses, the Government urges that it had the correlative right to combine them with the more serious robbery offenses and to dispose of all charges at a single trial. See Manual for Courts-Martial, United States, 1969 (Rev), paragraph 31*g.*

We believe that the Government's contentions are sound. In United States v Mladjen, 19 USCMA 159, 161, 41 CMR 159, 161 (1969), we pointed out that delay was chargeable to the Government only when the suspect or accused is confined or restrained in connection with the particular charge sought to be dismissed. Here, the accused was concededly not confined on the robbery charges but for his unauthorized absences and other charges which have since been dismissed. Thus, as to the robbery, the initial date of the delay is not computable from the beginning of the accused's confinement on June 21. The defense apparently recognizes this fact, for it would have the period counted from at least June 26, the date on which Agent Salmon was advised that Phillips had named the accused as a participant in the offenses. The Government, on the other hand, in pressing the same issue,

would have the delay as to the robbery charges commence on August 3, the date on which the accused was charged with that offense.

■ Neither of these propositions strikes us as a proper basis for the delay computation. The defense argument would require hasty preparation of charges and their prosecution on a minimal foundation. The Government position would allow it to proceed in a leisurely fashion until charges were formally prepared. In this case, we believe that the delay should commence when the Government had in its possession substantial information on which to base the preference of charges. That we find to have occurred on July 19, when Phillips was interrogated by Yeoman Pashegoba and definitely identified the accused as one of the participants in the robbery. This means that 83 days elapsed between the date on which the Government became chargeable with notice of the accused's offense and its ultimate trial. This, of course, is within the *Burton* period.

■ But we need not rest the delay on that basis alone. On ascertaining that Phillips was willing to testify in return for a grant of immunity, the Government promptly obtained that immunity. It cannot be held responsible for his subsequent repeated absences from duty. It had every right to assume that Phillips would return from his initial liberty and thereafter, when duly notified, would report to Agent Salmon for interview. The record reflects that positive steps were taken for effecting his early return to duty. While in retrospect they were unsuccessful, we cannot say that the prosecution stood idly by and permitted the accused to suffer additional confinement without any effort to speed the processes of justice. In short, we consider the repeated absences without leave of an essential Government witness as one of the extraordinary circumstances that excuse compliance with the *Burton* rule.

■ Moreover, the investigative effort in this case was hampered when it became necessary to assign Agent Salmon and as many as four other agents out of a total force of eight to investigate a series of fires aboard the U.S.S. *Forrestal.* This was indeed a truly extraordinary occurrence, within the meaning of United States v Marshall, supra. While the right of the accused to a speedy investigation of his offense is important, it must be balanced against the need quickly to solve an incident of apparent sabotage of an important operational unit of the Fleet. We have no desire to question the assignment of a higher priority to the *Forrestal* incident at the expense of the robbery investigation, and we believe that the delay involved was completely excusable. Thus, we are satisfied that, within the meaning of the *Burton* rule, the accused was not denied his right to a speedy prosecution. Certainly, as the defense argues, other things could have been done, but that is not the question.

■ Turning to the absence charges, we agree that the accused was perfectly correct in exercising his statutory right to refuse trial by summary court-martial. But it does not follow that the Government was there and then required to convene a special or general court-martial to try these offenses. While it might have done so, the Government was entitled to recognize that the accused was also under robbery charges and to determine that all offenses should be disposed of at a single trial. United States v Batson, 12 USCMA 48, 52, 30 CMR 48, 52 (1960). Indeed, this is a preferable policy, MCM, paragraph 31*g.* Had a separate court been convened and the accused tried, he would undoubtedly have remained in confinement whether convicted or not, for the robbery charges would have remained pending. Thus, there was little if anything to be gained by the convening of separate proceedings, and the failure to do so did not cause a violation of the *Burton* rule.

We emphasize that nothing we say here is intended to detract in any way from the principles that we have heretofore laid down in *Burton* and *Marshall.*

The decision of the U. S. Navy Court of Military Review is affirmed.

Judge QUINN and Senior Judge FERGUSON concur.